**Charlotte BALDI, in her own right, as Trustee Ad Litem and as Administratrix of the Estate of William Baldi, Deceased,**

v.

**CITY OF PHILADELPHIA, et al.**

**Civ. A. No. 85–1314.**

United States District Court, E.D. Pennsylvania.

May 8, 1985.

· John Mattioni, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, Pa., for plaintiff.

Norma S. Weaver, Deputy City Solicitor, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

VANARTSDALEN, District Judge.

The primary question before the court is whether a twenty minute police detention of the driver of a motor vehicle, stopped for a minor traffic violation while transporting plaintiff's decedent to the hospital, creates a cause of action on behalf of the decedent under section 1983 of the Civil Rights Act as a deprivation of life or liberty without due process of law. This case brings to mind the admonition of Judge Posner of the Seventh Circuit:

> No problem so perplexes the federal courts today as determining the outer bounds of section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, the ubiquitous tort remedy for deprivations of rights secured by federal law (primarily the Fourteenth Amendment) by persons acting under color of state law.

*Jackson v. City of Joliet,* 715 F.2d 1200, 1201 (7th Cir.1983).

The issue presented in this case requires analyzing the "outer bounds" of section 1983 liability. It presents an unusual factual situation. Care must be taken to assure that the complaint sets out a cause of action under section 1983. Actions of police officers are only actionable under section 1983 if done under color of state law and deprive an individual of a right, privilege or immunity secured by the Constitution or laws. Section 1983 was not intended to transform all common law torts (whether negligent or intentional) committed by police officers into causes of action under federal law capable of redress in federal court. Likewise, a policy or custom of a municipality is actionable under section 1983 only if the policy itself is unconstitutional or in violation of law and the implementation of the policy or custom caused the plaintiff's harm. *King v. Ware,* 522 F.Supp. 1206, 1210 (W.D.Pa.1981).

Plaintiff's complaint, originally filed in state court, alleges that defendant police

officer Michael Zukowski and three unidentified Philadelphia police officers stopped a vehicle driven by Anthony Cannella for running a red light. Plaintiff's decedent, William Baldi, was a passenger in Mr. Cannella's car, along with plaintiff Charlotte Baldi and Kimberly Cannella. Mr. Cannella and his passengers were allegedly detained for twenty minutes and Mr. Cannella was issued a traffic citation for "disregarding red signal." Plaintiff alleges that "William Baldi was in desperate need of emergency medical treatment and was enroute to the hospital" when the car was stopped. Defendant police officers, however, allegedly failed to provide emergency escort or transportation, and detained Mr. Baldi and prevented him from obtaining necessary, emergency medical care. Mr. Baldi died the next day in the hospital. Plaintiff alleges that the death was a proximate result of the defendants' wrongful conduct.

Plaintiff's complaint sets forth three causes of action, two under state law and a third alleging a violation of plaintiff's decedent's rights under the fourteenth amendment. Defendant removed plaintiff's complaint to this court pursuant to 28 U.S.C. § 1441(b). Before the court are defendants' motions to dismiss the complaint and amended complaint and plaintiff's motion to remand. The motions will be addressed in turn.[1]

Plaintiff's complaint and amended complaint with regard to section 1983 liability present difficult and perplexing issues. Unfortunately, neither of the briefs submitted by the parties was particularly helpful in isolating and addressing the novel issues presented in a case that clearly stretch to the "outer bounds" of section 1983 liability.

Section 1983 of Title 42, United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

In order to establish the liability of the four defendant police officers under section 1983, plaintiff must establish that her decedent was deprived of a constitutional or statutory right and that such deprivation was caused by the officers acting under color of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

There is no doubt that the defendant police officers were acting under color of state law in this case. Liability under section 1983 attaches, however, only if the defendants deprived plaintiff's decedent of a right, privilege or immunity secured by the Constitution or laws of the United States. Determining whether such a deprivation occurred under the facts alleged is the difficult question presented by this case.

Plaintiff contends that a number of cases "have affirmed an individual's right to medical care under the Constitution." Plaintiff's contention is far too broad. There is no provision in our Constitution, as I read it, guaranteeing citizens the right to receive medical care. What courts have frequently held is that prisoners (not the broad category "individuals") are entitled to "reasonable medical care, as needed."

---

1. Defendants' motion to dismiss, inter alia, asserts that plaintiff's complaints fail to state a cause of action under 42 U.S.C. § 1983. Section 1983 is the only basis for federal jurisdiction (and was the ground for removal pursuant to 28 U.S.C. § 1441(b) ). Logically, therefore, the motion to dismiss ought to be decided before the motion to remand. If plaintiff's complaints fail to state a cause of action under section 1983, the action would be remanded to state court for disposition of the state causes of action.

*Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir.1977). The "[f]ailure or refusal to provide treatment, when indicating a 'deliberate indifference to serious medical needs of prisoners' results in 'the unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment." *Bowring*, 551 F.2d at 47 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)).

Although *Estelle* was decided under the eighth amendment, which prevents cruel and unusual punishment to those convicted of crimes, courts have determined that the deliberate failure or refusal to provide necessary medical treatment to persons held in police custody also violates the due process clause of the fourteenth amendment. *Bowring*, 551 F.2d at 44.

The most troubling aspect of plaintiff's claim under section 1983, and one not addressed by either side, is that every case cited by the parties involved claims by prisoners or individuals under arrest or who were in police custody. There is no allegation that plaintiff's decedent was a prisoner or under arrest or in custody. In order to fit her case within the facts of the cited cases, the stopping and detaining of the vehicle transporting plaintiff's decedent to the hospital would have to amount to a de facto arrest. Plaintiff has alleged facts, which must be taken as true for purposes of the motion to dismiss, that if proved may be sufficient to establish that plaintiff's decedent was in police custody or "under arrest."[2] If plaintiff can prove that Mr. Baldi was in police custody, and the police knew that he needed immediate medical attention, and the defendant officers failed or refused to provide treatment causing Mr. Baldi's injury or death, then plaintiff may be able to recover damages under section 1983. Plaintiff has alleged in substance such facts.

Plaintiff has set out a claim under section 1983 against the individual police officers sufficient to withstand a motion for judgment on the pleadings.

There is a second, and more important reason why this court cannot dismiss the section 1983 claim asserted against the defendant police officers. I am not convinced, under the facts of this case, that section 1983 liability ought to hinge solely on the determination whether an individual was under arrest or in police custody.

▬▬ There is no general constitutional right to receive medical treatment; therefore, when the failure or refusal to provide medical treatment is found to be a deprivation of constitutional rights, it necessarily stems from the state's control over the person (i.e., a prisoner or person otherwise confined in police custody). The state's control over an individual's freedom of movement is fundamental to its obligation to provide medical treatment, the intentional failure or refusal of which can be a deprivation of life or liberty without due process of law. *See Bowring*, 551 F.2d at 46–47 (quoting *Spicer v. Williamson*, 191 N.C. 487, 132 S.E. 291, 293 (1926) ("Constitutional doctrine has absorbed the common law view that '[i]t is but just that the public be required to care for the prisoner, who cannot, by reason of the deprivation of his liberty care for himself.' "). In sum, the state's duty to provide medical treatment arises because the state has control over a person's freedom and therefore assumes responsibility for the individual. Once the duty attaches, the individual under state control has a constitutional right to adequate medical care, the intentional deprivation of which is actionable through section 1983. When the state does not control an individual's freedom there is no duty to provide medical treatment and, hence, the failure or refusal to provide care is not a

---

**2.** The question whether an individual is "under arrest" or in police "custody" involves difficult legal and factual determinations. The issue frequently arises in criminal law in the context whether a person was in "custody" such that his *Miranda* rights were required to be read to him. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.") *See also Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

deprivation of any guaranteed right, privilege or immunity.

■ That is not to say, however, that an individual who is free from custody cannot have his constitutional rights infringed. Absent state custody, an individual has no constitutional right to receive or to be provided with medical care by the state. There is also no general constitutional right, absent state custody, to have emergency transportation provided by the police to take a person to a place where he can receive medical treatment. *Cf. Jackson v. City of Joliet*, 715 F.2d 1200, 1203–04 (7th Cir.1983) ("[T]he Fourteenth Amendment ... sought to protect Americans from oppression by state government, not to secure them basic governmental services."). The Constitution is sometimes said to be a charter of negative rather than positive liberties. *Id.* at 1205 (citing *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982)). A negative liberty is freedom from state interference or intrusion, in effect, "being let alone by the state." *Jackson*, 715 F.2d at 1204. One of the negative liberties guaranteed by the Constitution is the right to be free from undue state interference or hindrance in promptly obtaining or attempting to obtain available medical treatment when it is needed. The life and/or liberty interests of the fourteenth amendment's due process clause encompass the right promptly to seek available medical care without undue state interference or hindrance irrespective of the state's custody or control over an individual.

■ Plaintiff's complaint and amended complaint state a cause of action pursuant to section 1983 under either theory outlined above. If plaintiff can establish that the state exercised such a degree of control over the decedent that the positive duty to provide care and transportation attached,[3] she may be able to recover for the state's failure to act. Plaintiff may also be able to establish that the state intentionally interfered with the decedent's right promptly to obtain available medical treatment when he needed it by deliberately preventing him from proceeding to the hospital.

■ In order to prevail against defendant, City of Philadelphia, the allegedly unconstitutional actions of the police officers must implement or execute a policy statement, ordinance, regulation or decision officially adopted and promulgated by the City's officials or officers. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). The city may not be held liable merely on the basis of respondeat superior. *Id.* at 691, 98 S.Ct. at 2036.

■ Plaintiff's original complaint plainly failed to state a cause of action against the city. Plaintiff has, however, filed an amended complaint. The amended complaint alleges that the city has a policy or custom of limiting the transportation of unconscious and seriously ill persons to patrol wagons and of preventing use of an alternative source of transportation, which, in this case, delayed access to medical care.

There is no constitutional right for an individual not in custody to be provided with or to receive emergency transportation to a place where medical treatment may be obtained. A policy or custom prohibiting such transportation is therefore not unconstitutional. If, however, there is a duty to provide treatment, the failure to provide emergency transportation may be

---

**3.** Refusal or failure to provide medical care and/or transportation to a medical facility can be a deprivation of a protected right only if there is a duty to provide care. The duty depends upon the degree of control of the state over the individual. The difficult factual and legal issue is to determine at what point the control is such as to impose an affirmative duty and the extent of that duty. Problem cases arise where there may be a temporary stop or detention not resulting in an arrest. Although fourth amendment cases may be helpful in analyzing this case (see footnote 2 for example), reliance on them is questionable because of different underlying interests. Factually, the nature and length of the detention, the physical ability of Mr. Baldi to leave, the police officer's actions, and the subjective state of mind of Mr. Baldi will be some of the relevant inquiries.

actionable under section 1983. If plaintiff can prove that the control over plaintiff's decedent exercised by the police was such that the duty to provide treatment arose, then the policy or custom of the city that is alleged in the amended complaint, if established, may have been implemented by the police officers in refusing to provide emergency transportation and liability against the city may be established.

Plaintiff may also be able to establish a cause of action against the city by proving that, after stopping the car that was transporting Mr. Baldi to the hospital, the police officers refused to allow the driver to transport plaintiff's decedent to the hospital, and would only permit transportation to be made by police wagon. In order to recover against the city for such a claim, plaintiff must establish that plaintiff's decedent was detained solely because the officers were waiting for a police wagon to arrive and transport Mr. Baldi to the hospital. If the vehicle was detained for any other reason, or for no apparent reason, the city's alleged policy would not have caused the harm. In short, plaintiff has stated a cause of action against defendant city sufficient to withstand a motion for judgment on the pleadings.

■ Plaintiff has named the City of Philadelphia Police Department as a party defendant. The Police Department will be dismissed because it does not have a separate corporate existence; suits against the department "shall be in the name of the City of Philadelphia." Pa.Stat.Ann. tit. 53, § 16257 (Purdon 1957).

In conclusion, with regard to the motions to dismiss the complaint and amended complaint, the motions as to defendants Michael Zukowski, three unidentified Philadelphia Police Officers and the City of Philadelphia will be denied. The motion as to defendant Philadelphia Police Department will be granted.

■ Plaintiff has filed a motion to remand this action to the Court of Common Pleas of Philadelphia County asserting that it was improperly removed to this court.

Plaintiff asserts that there is no separate and independent claim or cause of action that merits removal pursuant to 28 U.S.C. § 1441. Plaintiff's position is without merit.

Plaintiff contends that "[u]nder [28 U.S.C. § 1343] granting original, but not exclusive, jurisdiction for civil rights claims, a plaintiff may choose between federal and state forums. If a plaintiff selects the state forum, the defendant cannot remove. *See,* Moore's Federal Practice, Volume 1, Paragraph 0.60[7], page 637." Plaintiff's Brief in Support of Motion to Remand at 5–6. Plaintiff's position is clearly and totally wrong. It would eviscerate the removal statute in cases involving civil rights claims, which are indisputably claims or rights arising under federal law. *See* 42 U.S.C. § 1983; 28 U.S.C. § 1441(b). The full context of plaintiff's reference to Professor Moore is self-explanatory:

> On the other hand in some situations, a plaintiff may have a choice between federal and state forums; and if he chooses the state forum the defendant cannot remove. A good example is an action brought under the Federal Employers' Liability Act. There are others.

1A J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, Moore's Federal Practice §§ 0.60[7] (2d ed. 1976). Neither Professor Moore nor anyone else to my knowledge has ever opined that a civil rights action was one of the few situations where a plaintiff's choice of state court prevails. In fact, 28 U.S.C. § 1441(b) provides to the contrary.

■ Plaintiff's final and claimed "most significant" contention in support of remand is that "the defendants have not plead, have not shown, and cannot show that the civil rights claim in plaintiff's complaint is a 'separate and independent' claim or cause of action." Plaintiff's Brief in Support of Remand at 6. This contention by plaintiff is so totally devoid of merit that it warrants only brief treatment. Defendants' right to removal in this case stems from 28 U.S.C. § 1441(b) because it

involves a civil action founded on a claim or right arising under the Constitution and laws of the United States over which this court has original jurisdiction. Plaintiff's third cause of action was for violation of the decedent's constitutional rights under 42 U.S.C. § 1983. Unquestionably, this court has original jurisdiction over such a claim and removal was proper. Section 1441(c), which contains the "separate and independent" language, merely allows this court, in its discretion, to decide whether to hear the entire action that was filed in state court or only that part of it over which there is federal jurisdiction. There is no doubt that plaintiff's section 1983 claim is "a separate and independent claim or cause of action" that would be removable if sued upon alone and has been joined with claims that are otherwise non-removable. I have therefore exercised my discretion to hear the entire case pursuant to 28 U.S.C. § 1441(c). It would be in the interest of none of the parties to hear only the constitutional claims in federal court and the state claims in state court. The federal claims cannot be remanded. Therefore the entire case should remain in this court where it has been properly removed.